JUSTICE MORRIS
dissents.
¶44 “Good fences make good neighbors,” wrote American poet Robert Frost from his perspective in rural New England in the early twentieth century. Frost gave voice to the longstanding human urge “to be let alone.” See Samuel D. Warren & Louis D. Brandeis, The Right to Privacy, 4 Harv. L. Rev. 193, 193 (1890) (noting that the traditional common law right to life and property had developed to encompass a broader “right to be let alone” that included recognition of “intangible” *193 interests). Common sense dictated that minding your own business would be easier if barriers clearly demarcated the boundaries of your business.
¶45 Frost likely never imagined how his homespun aphorism would mutate in rural Montana of the early twenty-first century. The yearning to be let alone now confront mercury vapor lighting and industrial strength fencing that would make proud the wall builders of Berlin. Walden Pond it is not. Frost would take heart, however, from the similar common sense displayed by the jury in this matter. The jury recommended that the Tarltons should replace the offending 175 watt mercury vapor lights, known as “barn beacons,” with modernized lights and that the Kaufmans, in turn, should “take down their fence.”
¶46 The jury’s plea for common sense fell on deaf ears. Instead the parties engaged in a modern form of the “prisoner’s dilemma.” The Tarltons had no guarantee that any efforts to modernize the lighting would lead to the Kaufmans removing the fence. On the other hand, the Kaufmans had no guarantee that a good faith gesture on their part of removing the fence first would be greeted with a decision by the Tarltons to remove the “barn beacons.” The parties sought judicial resolution of their dispute.
¶47 The parties spent three days presenting their cases to the jury. The parties, not surprisingly, haggled over the proper instruction of nuisance to be given to the jury. The jury returned a verdict that the fence did not constitute a nuisance. The jury conversely determined that the Tarltons’ mercury vapor lighting did not constitute a nuisance. The jury finally determined that the Kaufmans’ fence did not qualify as a “spite fence” under the circumstances presented here. I dissent from the Court’s failure to defer to the jury’s reasoned judgment.
¶48 As the Court notes, we must “‘consider the jury instruction in its entirety, as well as in connection with the other instructions given and with the evidence introduced at trial.’” (quoting Murphy Homes, Inc. v. Muller, 2007 MT140, ¶ 74, 337 Mont. 411, ¶ 74, 162 P.3d 106, ¶ 74). The jury instructions in this matter included an instruction for nuisance on the fence, and instruction for nuisance on the mercury vapor lighting, and an instruction for a “spite fence.” The Court must consider the separate nuisance instructions and the “spite fence” instructions together in evaluating whether the jury instructions, in their entirety, correctly stated the law. Murphy Homes, Inc., ¶ 74. We also must remember that the Kaufmans filed a nuisance claim of their own regarding the Tarltons’ mercury vapor lighting.
*194 ¶49 The nuisance instruction relating to the fence contained the admonition that “[generally, a structure cannot constitute a nuisance merely because it is considered unsightly or because it obstructs a party’s view.” The instruction proceeded to set forth the elements for a nuisance claim. The Tarltons objected only to the admonitory language and raised no concern with the remainder of the instruction.
¶50 The District Court instructed the jury on the Kaufmans’ nuisance claim in a manner nearly identical to the Tarltons’ nuisance claim with one exception. The jury instruction on the Tarltons’ nuisance claim contained the admonitory “generally” provision. The jury instruction on the Kaufmans’ nuisance claim instead provided in its introductory paragraph that light shining on another’s property “may constitute a nuisance where the intensity of the light is strong enough to seriously disturb a person of normal sensitivities.” (Emphasis added.)
¶51 The District Court balanced its admonitory language regarding “generally” in the nuisance instruction regarding the fence with the provision that the jury could not consider the Tarltons’ mercury vapor lighting to constitute a nuisance unless the lights “seriously” disturbed the Kaufmans’ enjoyment of their property. Nothing in Montana’s statutory definition of nuisance, set forth in § 27-30-101, MCA, limits a nuisance to those things that “seriously” disturb a person’s enjoyment of their property. Likewise, nothing in California’s pattern jury instruction for private nuisance limits a nuisance to those things that “seriously” disturb a person’s enjoyment of their property. Jud. Council of Cal. Civ. Jury Instr. 2021 (rev. Feb. 2007).
¶52 The District Court’s jury instructions on the Tarltons’ “spite fence” claim provided further context. These instructions provided first that no property owner has the right “to erect and maintain an otherwise useless structure for the sole purpose of injuring his neighbor.” The “spite fence” instruction further provided that a “spite fence” is “of no beneficial use” to the party and that the party built the “spite fence” “solely to harass and anno/’ their neighbors.
¶53 The jury rejected the Tarltons’ “spite fence” claim and in doing so, rejected the notion that the Kauffman’s fence constituted an “otherwise useless structure.” The jury also explicitly rejected the contention that the Kaufmans had built the fence “for the sole purpose” of harassing and annoying the Tarltons. As implied by the jury’s verdict, and made explicit by the jury’s recommendation, the jury determined that the Kaufmans had built the fence to block the light emitting from the Tarltons’ mercury vapor lights.
*195 ¶54 In the context of the evidence presented to the jury in this case, the District Court did not act arbitrarily without employment of conscientious judgment or exceed the bounds of reason when it included the admonitory “generally” language in the jury instruction on the Tarltons’ nuisance claim. Kiely Const., L.L.C. v. City of Red Lodge, 2002 MT 241, ¶ 92, 312 Mont. 52, ¶ 92, 57 P.3d 836, ¶ 92. I disagree with the Court’s conclusion that the jury instructions, taken in their entirety, did not state the law of nuisance fully and fairly. Murphy Homes, Inc., ¶ 74. I dissent on this issue. I concur with the remainder of the Court’s opinion.
JUSTICE WARNER joins in the foregoing dissent.